FILED
CLERK, U.S. DISTRICT COURT

04/06/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____DVE_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>PAUL MWANGI,<br>　aka "Pablo,"<br>　aka "Houdini,"<br>　aka "John,"<br><br>　　　　Defendant. | No. 2:22-cr-00128-GW<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Oxycodone; 18 U.S.C. § 1956(h): Conspiracy to Launder Monetary Instruments; 21 U.S.C. § 853 and 18 U.S.C. § 982: Criminal Forfeiture] |

The Grand Jury charges:

## COUNT ONE

[21 U.S.C. § 846]

A.　INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.　Oxycodone was the generic name for a highly addictive prescription analgesic which was classified as a Schedule II controlled substance, meaning that it had a high potential for abuse, the drug had an accepted medical use with severe restrictions, and abuse of the drug or other substances could lead to severe

psychological or physical dependence. The highest dose of oxycodone available, and the dose most popular for the drug abusing population, was the 30 milligram tablet.

2. "Cappers" were individuals who recruited indigent, drug-addicted, or otherwise corrupted individuals (the "sham patients") to obtain prescriptions for oxycodone from medical clinics. Sham patients who obtained prescriptions did not have a legitimate medical need for controlled substances and intended to sell on the black market the controlled substances obtained pursuant to the prescription (the "fraudulent prescriptions").

B. <u>OBJECTS OF THE CONSPIRACY</u>

3. Beginning in or around November 2018, and continuing to at least in or around March 25, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant PAUL MWANGI, also known as ("aka") "Pablo," aka "Houdini," aka "John," conspired with Kennedy Timina, Brian Asura, and others known and unknown to the Grand Jury to knowingly and intentionally distribute and possess with intent to distribute oxycodone, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

C. <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED</u>

4. The objects of the conspiracy were to be accomplished, in substance, as follows:

    a. Defendant MWANGI would coordinate with cappers to sell to him, Timina, and Asura oxycodone pills that the cappers had obtained from corrupt medical practitioners using sham prescriptions.

   b. Defendant MWANGI would provide funds to Timina and Asura and direct them to contact cappers and arrange to purchase oxycodone pills.

   c. At defendant MWANGI's instructions, Timina and Asura would drive to various locations in Los Angeles County to meet the cappers and purchase oxycodone pills.

   d. Defendant MWANGI, Timina, and Asura would maintain logs of oxycodone transactions, including the number of oxycodone pills purchased from, and the amount paid to, each capper.

   e. Defendant MWANGI, Timina, and Asura would consolidate the purchased oxycodone into packages and ship bulk oxycodone to drug customers in Massachusetts.

D. OVERT ACTS

 5. In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, defendant MWANGI, Timina, Asura, and others known and unknown to the Grand Jury committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

 Overt Act No. 1: On or about January 8, 2019, using coded language in an encrypted messaging application, defendant MWANGI set up a group chat with Timina and Asura for the purpose of tracking the amounts of oxycodone pills collected and money paid to cappers.

 Overt Act No. 2: On or about January 11, 2019, using coded language in an encrypted messaging application, Asura confirmed to defendant MWANGI that he had shipped a package of bulk oxycodone and attached a photograph of a shipping confirmation.

Overt Act No. 3:   On or about February 3, 2019, in an encrypted messaging application, defendant MWANGI asked Asura, "Did u ship yet[?]" Asura responded, "Just did," and sent a photograph of a shipping receipt listing a shipping address in Boston, Massachusetts.

Overt Act No. 4:   On or about February 19, 2019, using coded language in an encrypted messaging application, Asura sent to Timina and defendant MWANGI a log of oxycodone pills purchased that day.

Overt Act No. 5:   On or about March 3, 2019, using coded language in an encrypted messaging application, defendant MWANGI provided a hotel address, "Best Western Plus West Covina Inn 3275 E Garvey Ave S, West Covina, CA 91791," and room number, "422," to Asura for the purpose of meeting there to package and ship oxycodone to a buyer in Massachusetts.

Overt Act No. 6:   On or about March 10, 2019, using coded language in an encrypted messaging application, defendant MWANGI informed Asura that one of the cappers had dropped off pills and instructed Asura to make sure the daily pill logs reflected an additional "1,067" pills from that capper.

Overt Act No. 7:   On or about March 26, 2019, inside of a Volkswagen, Asura possessed a black laptop bag containing 1,860 oxycodone pills.

Overt Act No. 8:   On March 26, 2019, inside of an Infiniti SUV, Timina possessed $28,057 in cash to be used to purchase oxycodone pills.

COUNT TWO

[18 U.S.C. § 1956(h)]

6. Paragraphs 1 and 2 of this Indictment are re-alleged here.

A. OBJECT OF THE CONSPIRACY

7. Beginning no later than September 2, 2016 and continuing to at least April 20, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant PAUL MWANGI, also known as ("aka") "Pablo," aka "Houdini," aka "John," conspired with Harrison Maruje Mureithi, aka "Paul," aka "P," aka "Mzito," Co-Conspirator 2, and others known and unknown to the Grand Jury to knowingly and intentionally conduct and attempt to conduct financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and which property, in fact, involved the proceeds of specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846, knowing that the transactions were designed, in whole or in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

B. MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

8. The object of the conspiracy was to be accomplished, in substance, as follows:

a. Defendant MWANGI would receive cash from Mureithi, knowing that the cash represented proceeds of illegal oxycodone sales.

5

      b.    Defendant MWANGI would deposit the cash he received from Mureithi in the following accounts controlled by him: a Wells Fargo account ending in 3298 held in the name of Staff Today, Inc.; a Wells Fargo account ending in 9229 held in defendant MWANGI's name; a Wells Fargo account ending in 8965 held in the name of Lead Staffing Corporation; a Chase account ending in 2928 held in the name of A.M.; and a Bank of America account ending in 5234 held in the name of A.M.

      c.    Defendant MWANGI would issue checks drawn on the Staff Today, Inc. Wells Fargo Bank Account to Co-Conspirator 2, representing a portion of the cash proceeds from the sale of fraudulent oxycodone pills that Mureithi had given defendant MWANGI.

      d.    Defendant MWANGI would create fake employment verification documents purporting to show that Co-Conspirator 2 was employed by Staff Today, Inc., to lend credibility to the checks from Staff Today, Inc. issued to Co-Conspirator 2.

C. <u>OVERT ACTS</u>

9.    On or about the following dates, in furtherance of the conspiracy and to accomplish the object of the conspiracy, defendant MWANGI, Mureithi, Co-Conspirator 2, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

<u>Overt Act No. 1</u>:    On or about January 30, 2017, defendant MWANGI deposited $1,000 into the Staff Today, Inc. Wells Fargo Account.

<u>Overt Act No. 2</u>:    On or about February 15, 2017, defendant MWANGI issued a check to Co-Conspirator 2 in the amount of $8,000 drawn on the Staff Today, Inc. Wells Fargo Account.

<u>Overt Act No. 3:</u>   On or about March 24, 2017, defendant MWANGI deposited $13,000 into the Staff Today, Inc. Wells Fargo Account.

<u>Overt Act No. 4:</u>   On or about April 10, 2017, defendant MWANGI deposited $5,000 into the Wells Fargo Account held in his name.

<u>Overt Act No. 5:</u>   On or about April 20, 2017, defendant MWANGI issued a check to Co-Conspirator 2 in the amount of $4,500 drawn on the Staff Today, Inc. Wells Fargo Account.

FORFEITURE ALLEGATION ONE

[21 U.S.C. § 853]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from such offense;

(b) All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense; and

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3. Pursuant to Title 21, United States Code, Section 853(p), the defendant, if so convicted, shall forfeit substitute property if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of the defendant's conviction of the offense set forth in Count Two of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

    (a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

    (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in

committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

A TRUE BILL

/s/
Foreperson

TRACY L. WILKISON
United States Attorney

[signature]

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office

BRADLEY E. MARRETT
Assistant United States Attorney
Deputy Chief, Santa Ana Branch Office

ANDREW BESHAI
Assistant United States Attorney
Santa Ana Branch Office